2011, 12-18, 12-38. Next case is POWER INTEGRATIONS v. FAIRCHILD SEMICONDUCTOR 2011, 12-18, and 12-38. Is he ready when you are, Mr. Jacobs? Thank you, Your Honor, and may it please the Court, Blair Jacobs on behalf of Fairchild, the appellant. Let me start out by discussing the damages issues in this case because resolution of the damages issues here, specifically the reliability and or the admissibility of the expert witness's testimony on damages, could eliminate a number of issues in this case. If time permits, I would like to briefly touch upon the willfulness finding of the District Court and a claim construction finding relating to soft-start circuit because those findings could benefit practitioners and potentially lower courts as well. Well, we're not here to benefit practitioners and lower courts in general. We're here trying to decide your appeal and I would have thought you'd want to start with the claim construction, the soft-start point, whether it's means plus function. Absolutely, Your Honor. The soft-start circuit term, which is found in the 866, I'm sorry, in the 851 patent and in the 366 patent, the District Court clearly erred in construing that term as a means plus function term. The District Court found that the presumption against the means plus function application where means language is not used was rebutted here because he felt that there was not sufficient, he said specific, description of the structure in the claim. That came from some expert witness testimony that the plaintiffs had put on, again, looking only at the claim. That came as well from briefing that was provided to the District Court, which focused only on the claim. When you look at soft-start... Even if we agree with you, is your alternative proposed construction the only possible construction that this court could adopt upon its de novo review? No, Your Honor. On de novo review, the court could accept any construction, but the construction that we have proposed is consistent with the specification, is supported by the prosecution history. And it reads directly on the prior art. That's your point, right? Phillips says, Your Honor, that although certainly the court should try to avoid rendering a claim construction that would invalidate a patent, that you stay true to the description in the specification of what actually is being claimed. Here, there is a good description in the specification of soft-start circuit. But that is the point of your debate. If you think if we adopt your construction, then it's obvious. The patent is obvious because it reads on the prior art? We think that that's why the plaintiff chose to go the means plus function route here. Certainly, we advocated that it would be invalid as a matter of law based on obviousness. What if we concluded that it's not a means plus function claim, but upon consideration of the specification, at minimum, it has to be an internal or integrated circuit? Does that help you with respect to your obviousness analysis, or does that mean that it wouldn't affect the ultimate outcome in the case? I would argue, Your Honor, that that would be incorporating a limitation from the specification that wasn't required into the claim. It doesn't really help with the obviousness analysis one way or the other. We'll still have, upon remand, we'll still have the same arguments that we had, and it'll be up to the fact finder to determine, as a matter of fact, whether or not the patent is invalid, applying the appropriate and the proper claim construction. We did not have that the first time through because we had the means plus function claim construction, which clearly was not supported as a matter of law. Why don't you get to your damages point, if you were anxious to make it? Thank you, Your Honor. There's an interesting issue here relating to damages. The issue is, essentially, when you have products that are made outside of the United States and sold to a middleman outside of the United States, here it's a charger, essentially a chip that goes into a charger, and then sold again to an end user. Here, we're talking about Samsung cell phones. What type of evidence you need to put on, from a damages perspective, in order to establish a damages base that is reliable? What is reliable evidence in that scenario? Now here, the only evidence that was put on by the damages expert focused on the end product, the Samsung phone. It's interesting to note that the plaintiff could have obtained reliable evidence relating to the infringing device. They actually served a subpoena to Samsung, and they said in that subpoena, Samsung, tell us how many Fairchild chips, the accused chips, went from Dongyang, Dongyang is a charger manufacturer, and how many you received. That information could have been obtained. They did not move forward on that subpoena, never enforced it, left it sitting out there. So at the end of the day, the only information their expert witness had was information relating to the end product with no idea whatsoever. Have you read the court's recent decision in the O2 Micron case? Yes, Your Honor. All right, and in that case, the court did say that circumstantial evidence could be sufficient with respect to damages proof. Sure. What's the distinction between that case and this one? The distinction between that case and this case is here there is no circumstantial evidence relating to the accused chip. Everything that was focused on from the circumstantial evidence perspective here, there are two things that really come up in the briefing. The Samsung cell phones came from that internet article, 18%, and then there was some testimony from an analyst. He said that 33% in his experience of Samsung phones came into the United States. There was nothing, no number put forward by Mr. Troxell from which anybody could deduce circumstantially anything to do with the Fairchild chips. In fact, Your Honor, Mr. Troxell testified at deposition and at trial that he hadn't done anything to gather information relating to the Fairchild chips, which are the infringing devices. Section 284, which establishes damages, says that you're entitled to damages to compensate for infringement. Section 271 tells us that infringement requires a product or a process to be made, used, or sold in the United States. So in a reliability context, at a minimum, an expert proffering testimony on damages should have some reliable data concerning a volume of infringement potentially. Otherwise, the expert's testimony devolves into pure guesswork. But you're saying that to the extent there was circumstantial evidence, it's still two steps removed? It's two steps removed, absolutely. If they would have had circumstantial evidence, Your Honor, relating to the accused chips, some percentage, the court has said time and time again that damages is not an exact science. If they would have had something telling us, okay, of the Samsung phones, how many of those Samsung phones included chips made by Fairchild? And if their expert would have used that, then he might have come close to satisfying 702. Instead, he relied only on the Samsung phones. The judge should have decided to take deeper responsibilities under Daubert and excluded that testimony. Your motion in Lemonet, did the judge set a time frame for Daubert motions, or did you just incorporate Daubert into motions in Lemonet? We incorporated Daubert into the motions in Lemonet. And what the judge did, Your Honor, was he said, we also filed a summary judgment on damages. He said on the motion in Lemonet, I see the motion in Lemonet as very similar to the motion for summary judgment. I'm just going to take this under advisement. I'll look at it at trial and try to make a determination at trial. Let's go back. Weren't global sales considered of Samsung, of the chargers, global sales of Samsung chargers? And wasn't there evidence that reduced that down or attempted to reduce it down to U.S. sales? Your Honor, the evidence was of Samsung cell phones only, so nothing relating to the chargers. And there was evidence that showed, attempted to show, Samsung cell phone sales into the United States. The problem with that is... But that evidence is circumstantial, correct? It is circumstantial with regard to Samsung cell phones. The problem is, it could have been zero chips in those Samsung cell phones. It could have been zero. Nobody disputes that. So who decides that fact? The jury? And didn't they decide that? Wasn't this, weren't these arguments made before the jury? This is a reliability question. When a damages expert has no reliable basis for his testimony, he cannot be permitted to testify under Federal Rule of Evidence 702. It requires sufficient facts or data, 702 does. Here there's no facts or data relating to the infringing device. It requires a product of reliable principles. Reliable principles in this instance would have been the expert getting the information relating to the sales of the infringing chips, which it could have done. What is Judge Barnes' rule with respect to contemporary use objections made during the course of trial? I mean, I read the direct examination and while there was a motion in limine, there was no objection to any of this testimony during the course of the direct. I do not know exactly what his rule was at trial. However, this was all raised in a J-Mall following trial and was all considered as part of a J-Mall, the reliability, the amount of the damages, all of these issues. I understand that, but shouldn't there have been an objection during the course of the examination? I do not know what Judge Farnan had in place at the time. Certainly, I've been in front of Judge Farnan before where he's preserved all objections based on his pretrial findings. So certainly, it needed to be preserved one way or the other. There was no argument in the briefing here that it wasn't preserved. Okay, I have another procedural question for you. Your motion after trial as it relates to damages was captioned as motion for J-Mall or in the alternative for a new trial or remitter. In Judge Farnan's order, he says that you propose 18% as an alternative number and if you proposed that as an alternative and you got an alternative form of remedy, arguably, you wouldn't be able to object to that. What we said in the J-Mall, Your Honor, was as a matter of law, there was no reliable testimony for any worldwide damages. The only reliable evidence here related to the stipulated damages. However, if the court finds that there was some form of reliable evidence relating to the worldwide sales, linking somehow these chips to the United States, the 18% that was acceptable. However, clearly, the premise of the J-Mall was all of the testimony of the expert. I understand it, but when you file a motion in the alternative and you receive one of the forms of release that you're asking for, doesn't that end the inquiry? No, Your Honor. This court has an obligation just like the district court had an obligation to review the reliability of the testimony. Judge Farnan had an obligation to review the reliability of Mr. Troxell's testimony under 702 and the Supreme Court has told us in Kumho Tires and under Daubert to make sure that it was scientifically reliable. To make sure that it was somehow linked to the compensation that they were accepting. What just compensation is for infringement. They never tethered infringement to liability here. They just chose not to do so. They chose to look instead, because the number would be higher, at cell phone sales. Well, they made that decision and that resulted in a failure of proof when it comes to damages. So, in that case, though, shouldn't your request for release have been judged that the only possible remitter here is down to the $114,000? Well, that was the first request, Your Honor, and then it said, if the court decides that that is incorrect as a matter of law, then the 18% is a fallback position. So, clearly, the request was for the $114,000 in the J-Mall. That was the request. It was a fallback position, an alternative position, with regard to the secondary fallback position. You can't square the damages that we have here with prior precedent of this court. For example, Standard Havens, Golden Blount. In those cases, the court looked at foreign sales in a context, take Standard Havens, for example, lost profits, and eliminated the foreign sales. Said, oh, these are purely foreign sales. I'm going to eliminate the calculation because you can't recover for foreign acts of infringement. Here, it still remains in a bundle because we're looking at cell phones and we don't know whether or not these cell phones contain infringing chips. Mr. Jacobs, you wanted to save a little time. You can use it. I'll save it as you wish. Your Honor, if I could just touch one more issue very quickly, and then I'll save the rest of my time. Thank you. The finding of two quick issues in that finding. First of all, looking at JA 116, Judge Farnan says in this case he does not believe that it's possible to treat the objective prong and the subjective prong differently. He believes they have to be merged together. This court's precedent over the last few years since Seagate has been clear that the finding of the objective prong is a predicate, must be completed before you move to the subjective prong. Judge Farnan's opinion clearly says that he merged the two together. That's clearly erroneous. Second of all, Judge Farnan says in his opinion that he believes that if you look post-filing of the complaint at conduct and determine, oh, that's good conduct. You got opinions of counsel. You relied upon positive findings from the court. That would negate the ability of a willful infringement in any hard-fought and hotly contested patent litigation. That statement as part of his finding of willfulness is refuted by this court's prior findings in Spine Solutions. Can you also say alternatively those post-litigation opinions weren't worth much? The opinions, he really didn't address the re-exams, which had positive results. He didn't address the fact that there were very positive results in claim construction. He didn't address the fact that there were positive results in summary judgment briefing. In Spine Solutions, the court said that a strong obvious misdefense alone could lead to the objective prong not being satisfied, Your Honor. He didn't look at the totality of the circumstances. He did find, though, that the issue regarding copying by Fairchild, that met the objective standard. And the court has previously said that copying can only be considered under the subjective prong. That's the police finds been dead on, addressed. Copying can only be addressed under the subjective prong. That's part of his error. He conflated the two pronged, started with the subjective prong, and eliminated the objective of prong. That cannot be good law. Subject to any further questions of the court, I'll reserve. Well, you don't have nothing to reserve, but we'll give you two minutes of rebuttal time. Thank you, Your Honor. Mr. Schorkendorff, you have a cross-appeal, and you want to save three minutes on the cross-appeal. I would, yes, Your Honor. And that's up to you, and also depends on whether he has anything for you to rebut. We'll see how it goes. I may not need to reserve. Proceed. All right. Thank you. I appreciate it. May it please the court. Let me deal with three issues that the court raised and or counsel raised in the order they raised them. But I first want to make just a preliminary comment about which patents really bear on the damages award that's before you today. And in particular, this 366 patent and the soft start issue. The entire damages award, 100% of it, is supported by the combination of the 876 patent, that's the digital frequency jitter patent, and the 075 patent, which is the PTOP patent having to do with the device structure. So, and on 075, they have no appeal issues at all. On 871, they have this, their only issue is obviousness based on mark. So if the court disagrees with them on the obviousness issue, agrees with the court below... Are you talking about 851 or 876? 876. 876. You said 871. I'm sorry. I thought there was a patent that we hadn't been told about. 876 is the digital frequency jitter patent. That patent, actually that patent alone, just to 96% of the damages, whether remitted or not. I didn't say that, but the verdict form ties two patents into that damage award, does it not? It does, but the products that were accused of infringing overlap between the two frequency jitter patents, the 876 and the 851. So either one of those patents supports the same category of products in terms of damages. And there are a few additional products that the 075 reaches that the jitter patents do not. So my point is... So you're saying if the jury says, I award damages for the 851 and 876, and we find that we have to reverse as to the 851, that we're supposed to say the jury's entire award goes to the 876? Well, the evidence wasn't presented to the jury in that way. It was presented as the 075 covers a list of products. The 876 covers a list of products that's almost identical to the 075. The 851, much smaller list of products, and it completely overlaps those first two categories. And the testimony, we didn't ask for additive royalties. We didn't ask for redundant calculations of lost profits. So my point is on appeal, if the court affirms on the 876, and there is no issue before you on 075, that covers 100% of the damages before you, whether remitted or not, okay? So the soft start issue is... So soft start, it's not quite neither here nor there, but it really only pertains theoretically to if you were to come to a different conclusion on claim construction, it might affect the 876, then it might also affect the damages award. So it's a sort of a contingent decision, if I'm making sense. So let me ask you the same question that I asked before, and that is, if we were to disagree with the trial judge that this is a means of post-function claim, what would your alternative claim construction proposal be? Would you agree that the defendant's alternative claim construction or the appellant's alternative claim construction is the correct one, or do you have something else in mind? No. Clearly, theirs can't be right, because they read it right on the Figure 1 prior art and the patent. And so it's transparent what's going on here. I think we would have an alternative construction, but with all due respect, we didn't provide it in the papers, nor did they provide an alternative. It wasn't briefed. I think the thing to do, if you disagree on 112.6, is to do what the court did in the Inventio case and send it back and say to the district court, we don't agree it was 112.6, the parties never really discussed or debated what the construction should be. If it's not 112.6, do it over again, and then see where that leads. And again, depending on what happens with the rest of this appeal, that may never happen. That may never come to pass. But we do have an alternative construction, which is actually essentially what Your Honor asked in your question, and that is it's got to at least be internal. And the specification is replete with specific statements distinguishing the prior art on the basis that it's external to the circuit, and because it's external, it's subject to variations in line and load, and there are all sorts of problems with that. You need additional components because of that. I mean, it makes no sense whatsoever to then to interpret the claim to cover the very thing that's distinguished in the specification. Just one other comment on 112.6, if I may, because I know Judge Lurie, you started with this proposition. I just want to highlight, and obviously, there aren't a lot of cases from this Court saying the presumption is overcome. We acknowledge that. And I mentioned Invencio, and that was a case where the Court concluded the presumption was not overcome. But you have some unique facts in this case, and I just want to highlight them. Number one, this is a case where if not interpreted under 112.6 in our view, you could end up with a construction that reads on the prior art that's distinguished in the specification itself. That was not an issue in any of the prior cases, the 112.6 cases, at least the ones that are cited in the briefing here. Number two, if you look at a case like Invencio or some of the other cases where this says the presumption is not overcome, they're highly fact specific, and they depend on what other language is in the claim. In that case in particular, the Invencio case, the claim, there were two phrases at issue, and then the claim itself went on with a bunch of detail describing what that thing is and how it worked. If you look at the claim in this case, there's nothing like that factually. It's really a very different case. And so we gave two examples in the briefs of cases where the presumption was overcome. Moss Hamilton is one, and ironically the MIT case cited by Fairchild is another example where the Court actually addressed two terms that were not written in means form and held that one of them, this term colorant selection mechanism, was 112.6, the presumption had been overcome. And so it can be done, and we think this is a case where it should be done. Obviously the district court in this case felt strongly that it should be. All right, so if I could go on then to the damages issues. And here there are at least two aspects of the appeal on this. First of all is whether, and one relates to the cross appeal and one relates to Fairchild's appeal. The piece relating to Fairchild's appeal is what's the support for this 18 percent? Is it totally made up? Is it total speculation? And of course the answer to that is no. They have made a run at this theory throughout the case. And while I'd like to pick up on your waiver point, I have to say with all due respect, I don't think there's waiver here. They have tried to persuade Judge Farnan before trial, through motion in limine, through motion before trial, and through motion post trial, that this is a crazy theory without evidentiary support. And the judge has looked at it every time and said, no, there is evidentiary support. Yes, there is. And what is the support in the record? So let me just highlight some of that for you. First of all, it isn't as though our expert, Mr. Trostle, made it up. I mean, he didn't just pull 18 percent out of thin air. Where did he get 18 percent? He relied on two analyst reports, okay. Pulled off the internet? Yes. And who pulled him off the internet? Not him? I honestly don't believe, I don't remember whether it was counsel or Mr. Trostle. He did his own, he did a lot of his own searching in the case to find information. But these are not, really, if you look at them, they're in the record, okay. Well, they're in the record, but there was an objection to them. So the question is, did you ever lay a foundation with respect to where he got them, or have him testify in any way that these are the kinds of reports that an expert in this field would normally rely upon for purposes of rendering an opinion? Well, we did with Judge Farnham, which is why he essentially overruled the Daubert objection and let Mr. Trostle testify to this at trial. I mean, these reports were hotly debated, they were produced. These are not fly-by-night, you know, Wikipedia-type stuff. This is International Data Corp. and NPD. These are the two premier industry analyst organizations that track the wireless industry. These are professional organizations, they have professional researchers. They actually, in the case of the NPD report, they do substantial surveys of end-user customers. I mean, these are the reports that are used in the industry to track themselves. You're saying there's a record, a hearing on the motion in Lemonade where you lay all the evidentiary foundation that was not laid during the course of the trial? No, I'm not, I don't say that. I say that we address these issues in the briefing. We did not, the judge didn't have, Judge Farnham didn't hold an evidentiary hearing on this. How were the reports authenticated? Say again, I'm sorry. How were the reports authenticated? Well, they weren't, ultimately the reports themselves were not allowed into evidence. The way this worked is Mr. Trostle based his analysis in part on the reports, and I didn't get to the other part. There was testimony from witnesses at trial that also supported a number even higher than 18%. So there's trial testimony that says 33%, okay? That's a second piece. 33% as it relates to cell phones? As it relates to cell phones, yes. But to address your question, Judge Reyna, the reports themselves were not admitted. We offered them into evidence. This was disputed pretrial. Judge Farnham, you know, he came to a compromise and a conclusion that, well, I'm not going to let the reports in. I'm going to let Mr. Trostle talk about them, which of course an expert can do without the reports themselves being in evidence. And he, we might second guess, it's an abuse of discretion standard, obviously. We might second guess whether there was enough foundation to let that testimony go to the jury, but it's abuse of discretion. He considered it carefully. He let it go to the jury. And it is in the record, and it is, I submit to you, substantial evidence, especially when you couple it with testimony from Sean Slayton, testimony from Bruce Renard, saying actually it's more like a third. A third, a third, a third. Samsung's cell phones that are at issue in this case, it's a third. One added comment on that, if I may, counsel says, well, there's no evidence about the chargers. There is all sorts of evidence about the chargers. There's no, it's just speculation that Samsung is selling 5 million cell phones a quarter in the U.S. without chargers. Fairchild's own witnesses, and this is quoted in the briefs and it's in the record, their vice president of sales, Tom Bieber, was on cross-examination, had to admit the obvious, which was, you know, look, you're not saying Samsung cell phones with chargers aren't coming to the U.S. Really? And he said, no, I'm not really saying that. So it's not a question of... Power Integrations is still selling products to Samsung, or was at the time, correct? Absolutely. So how do we assume that every single cell phone that comes in, comes in, A, with a charger, and B, with an infringing charger? Well, because the record is overwhelming here, it's a two-player market, right? We're talking about all of this evidence relates to a very specific set of programs at Samsung Wireless. These are not all Samsung phones. It's a particular set of programs where there were two people in the world qualified to supply. My client and Fairchild's client. Do you concede that your client was supplying some portion, and I thought it was 60%, right, at the time, during the relevant time frame? Fairchild got as high as 40% at times during the infringement period. But you're still assuming that the 18% that you say that comes in is 100% infringing? That at least 18% that were coming in were infringing, in the alternate calculation. Yeah, that's right. That's right. Because again, we had evidence that as many as 33% of the total number of phones were coming in. And so the math actually works out. But again, if I can, let me get to the last issue on the cross-appeal. My time is nine. The 18% was the judge's remitter. We thought, and we still think, and it's the subject of our cross-appeal, that it should have been 100%. But you haven't accepted the remitter? Well, we haven't appealed it as an alternative basis. We haven't said the remitter is, if you're going to do a remitter, we'll live with it. We've not appealed it, and we have no issues with it. Our problem is it never should have been remitted in the first place, that the jury's full award was completely supported by the evidence, because it has nothing to do with foreign infringement. It has nothing to do with extraterritoriality. This is a case, and we that if you can't sell a charger, a phone with a charger in the U.S., you can't sell one anywhere. These are universal products that are made to work worldwide. If you buy a cell phone, you get a charger. The same charger works in China as works in the United States. That's the way this industry works. That was uncontested. We put on evidence of that. Their own people admitted that. It's a global market. If you can't sell, if you're locked out of the U.S., whether it's 18%, 33%, or some other percentage, if you're locked out of the U.S., you're done. You don't sell anywhere. Would it have been possible to, let's say during the trial, to go out, purchase a phone, get the charger, open it up, and determine whether it contained a one-a-year or one-off charge? Yes. And we did that. That was the subject of the Lum report and testimony, and Judge Farnan concluded that he would not allow that into evidence because procedurally it had not happened at the time that he thought it should have happened. Our conclusion was we didn't have to do it. We went out to do it as belt and suspenders to remove any argument whatsoever, and unfortunately for us, at the end of the day, the judge didn't let the evidence in. Well, you did it after discovery, number one, and number two, you did it after the infringement period, right? Not after the infringement period. The infringement period continued. For all we know, they're still selling infringing chips. Let me back that up. What is it that was not allowed? The identity of the chip or the fact that the phone had a charger? Well, in a way it was both, Your Honor, because what this person did is, I mean, we proved the obvious, right? We were met with this argument that we thought was, frankly, ridiculous, that Samsung phones aren't coming to the U.S. and they aren't coming with chargers. So we had somebody go down to the Best Buy in Wilmington, Delaware, actually a few places in Wilmington, Delaware, buy Samsung phones, take them apart and go, well, first of all, holy cow, you can buy a Samsung phone. Who knew? Second of all, it comes with a charger. Shocking. Third of all, as we said, every single one that was taken apart had a PI chip or a Samsung chip that practiced patents. One or the other, right? Not all, they weren't all chips from Fairchild, right? I have to say, as I sit here, I can't recall whether the specific ones. So why didn't you do this at the beginning of discovery instead of on the eve of trial? The answer to that is, it was not something that we thought would be reasonably contested. How are we to know that you didn't go buy the only phone, the better charger that had a Fairchild chip and all the rest of the phones in the United States were your phones? I mean, your chips. Well, we know that two ways. First of all, there was never a challenge by Fairchild to the methodology used by the witness. It was never a suggestion that there was some selectivity employed here, number one. Number two, again, remember, this is a two-player market. We knew exactly what we sold to Samsung and we knew exactly what they sold to Samsung for each of these charger programs because it's just them and us. We knew the volumes per month and so on and so forth. So there was really no question that it was a them or us situation. Mr. Shurkenbach, you chipped away at your time, including what you wanted to reserve for your time. And if he deals with your cross-appeal, we'll give you one minute to respond. Okay. I don't know if I have any more time. I actually would like to use a minute of my rebuttal now if I can. I don't know what. Did I use it all? You used it. You used all of your time. No problem. Thank you. I appreciate it. All right. I just want to hit a couple of quick points on rebuttal. First of all, Mr. Shurkenbach mentioned Inventio. Inventio says look at the context, look at the full context, including the claim and the specification that was not done here. Soft start circuit itself tells one of Ordinary Skill in the Art what functionality and what structure we're dealing with here. The APEX case tells us that. The damages issue was an Do you agree with him though that the soft start issue doesn't have a big impact on the results here? The great majority of these damages have to come from the 851 patent claim for your honor. Absolutely. From the 851, not the 876. And not the 366, which is where the soft start circuit, primarily the damages would not, I agree with him. Because the soft start circuit does affect the 851, but you're saying no, it's the 876. Claim four of the 851 is where the damages came. Okay. The 18% issue is a very interesting issue. We got right to the heart of it. What support for the 18%? Now, Mr. Shurkenbach said the analyst reports. Well, the analyst reports were not allowed into evidence because they weren't authenticated. There was no foundation for them. But most importantly for this court, they only dealt with Samsung cell phones. Could have been 100%, could have been 0%. We have no idea because it was never connected to the infringement, never connected to the Fairchild chips. That's what they needed to do to make this reliable. Regardless of whether those internet articles, which could have been fabricated by anybody, were in fact authentic, it should have been admissible. They still don't carry the day from a reliability perspective. That's why rule 703 does not save them. Rule 703 only allows an expert to testify on reliable evidence. The but-for test real quick, this was not a two-player market. There's evidence showing- Can an expert under rule 703 determine the reliability of evidence by the use of his own experience, make a determination on reliability of evidence? Certainly an expert is supposed to look for and provide testimony based on reliable evidence. The problem here is that there's no connection between what he thought was reliable evidence and infringement. And clearly you have to have a linkage between infringement and damages. There was absolutely none here, just like the rest in that case. Do you agree that Judge Farnan made a determination that these documents were in fact sufficiently reliable? Not at all, Your Honor. You're talking about the internet articles? Yes. He excluded them. He said they're not reliable. I'm not going to let them in. He excluded them because they were hearsay. What he said was, I'll let you testify on them based on 703. The problem with that is 703 says an expert can only testify based upon his or her impressions of a document, usually if it's reliable. It's not reliable because it doesn't tell us anything about the facts. But if he said you can testify about it, isn't that impliedly concluding that they were reliable? He never reached that conclusion. And in order to reach that conclusion, there would have had to have been something relating. It can't be divorced from infringement. Those articles, just like the testimony of Mr. Slayton that he mentioned, all of that, as Your Honor pointed out, Judge O'Malley, they're all completely divorced from infringement. But that type of information can be used as circumstantial evidence. It can be used as circumstantial evidence with regard to Samsung cell phone sales. You cannot deduce from that, Your Honor, how many chargers were provided with those Samsung cell phones, nor can you deduce was it zero Fairchild chips in those chargers that went to Samsung, or was it 100 percent? We just don't know. That's why this is guesswork. That's why this testimony should have been excluded under Daubert. Thank you, Mr. Jacobs. And since there was no further argument on the cross-appeal, then the argument is over on this case. We will take it under advisement.